CENTER FOR DISABILITY ACCESS
Ray Ballister, Jr., Esq., SBN 111282
Mark Potter, Esq., SBN 166317
Phyl Grace, Esq., SBN 171771
Dennis Price, SBN 279082
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Chris Langer**,<br><br>    Plaintiff,<br><br>    v.<br><br>**The Novogroder Companies, Inc.**, an Indiana Corporation;<br>**N.H. Enterprises, Inc.**, a California Corporation;<br>**Shins Enterprises, Inc,** a California Corporation;<br>and Does 1-10,<br><br>    Defendants. | **Case No**.<br><br>**Complaint For Damages And Injunctive Relief For Violations Of:** American's With Disabilities Act; Unruh Civil Rights Act |

Plaintiff Chris Langer complains of The Novogroder Companies, Inc.; N.H. Enterprises, Inc.; Shins Enterprises, Inc.; and Does 1-10 ("Defendants"), and alleges as follows:

**PARTIES:**

1. Plaintiff is a California resident with physical disabilities. He is a paraplegic who cannot walk and who uses a wheelchair for mobility. He has a specially equipped van with a ramp that deploys out of the passenger side of

his van and he has a Disabled Person Parking Placard issued to him by the State of California.

2. In July 2015, Defendant The Novogroder Companies, Inc., was the real property owner of the building/parcel located at or about 4014 Tweedy Boulevard, South Gate, California.

3. Defendant The Novogroder Companies, Inc., is the current real property owner of the building/parcel located at or about 4014 Tweedy Boulevard, South Gate, California.

4. In July 2015, Defendant The Novogroder Companies, Inc., was the real property owner of the building/parcel located at or about 4040 Tweedy Boulevard, South Gate, California.

5. Defendant The Novogroder Companies, Inc., is the current real property owner of the building/parcel located at or about 4040 Tweedy Boulevard, South Gate, California.

6. In July 2015, Defendant N.H. Enterprises, Inc. was the business owner of IHOP, located at or about 4014 Tweedy Boulevard, South Gate, California ("IHOP").

7. Defendant N.H. Enterprises, Inc. is the current business owner of IHOP.

8. In July 2015, Defendant Shins Enterprises, Inc. was the business owner of Burger King, located at or about 4040 Tweedy Boulevard, South Gate, California ("Burger King").

9. Defendants Shin Enterprises, Inc. is the current business owner of Burger King.

10. Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein,

Complaint

including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION & VENUE:**

11. The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

12. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

13. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

14. IHOP and Burger King are facilities open to the public, places of public accommodation, and business establishments.

15. Parking spaces are one of the facilities, privileges and advantages offered by Defendants to patrons of IHOP.

16. In July 2015, there was one parking space at IHOP marked as reserved for persons with disabilities.

17. In July 2015, there was no van accessible space at IHOP.

18. In July 2015, the parking space marked as reserved for persons with disabilities at IHOP was not in compliance with the Americans with

Complaint

Disabilities Accessibility Guidelines ("ADAAG").

19. In July 2015, the parking space marked as reserved for persons with disabilities had been allowed to fade and deteriorate.

20. In July 2015, the parking space marked as reserved for persons with disabilities measured less than 216 inches in length.

21. In July 2015, the access aisle adjacent to the parking space marked as reserved for persons with disabilities measured less than 216 inches in length.

22. In July 2015, the access aisle was not marked with a blue border.

23. In July 2015, the access aisle did not have the required "NO PARKING" lettering.

24. There is currently one parking space at IHOP marked as reserved for persons with disabilities.

25. There is currently no van accessible space at IHOP.

26. The parking space marked as reserved for persons with disabilities at IHOP is not currently in compliance with the ADAAG.

27. Currently, the parking space marked as reserved for persons with disabilities is faded and deteriorated.

28. Currently, the parking space marked as reserved for persons with disabilities measures less than 216 inches in length.

29. Currently, the access aisle adjacent to the parking space marked as reserved for persons with disabilities measures less than 216 inches in length.

30. Currently, the access aisle s not marked with a blue border.

31. Currently, the access aisle does not have the required "NO PARKING" lettering.

32. Parking spaces are one of the facilities, privileges and advantages offered by Defendants to patrons of Burger King.

33. In July 2015, there was one parking space at Burger King marked as reserved for persons with disabilities.

Complaint

34. In July 2015, there was no van accessible space at Burger King.

35. In July 2015, the parking space marked as reserved for persons with disabilities at Burger King was not in compliance with the ADAAG.

36. In July 2015, the parking space marked as reserved for persons with disabilities measured less than 216 inches in length.

37. In July 2015, the access aisle adjacent to the parking space marked as reserved for persons with disabilities measured less than 216 inches in length.

38. In July 2015, the parking space marked as reserved for persons with disabilities did not have the required "Minimum fine $250" signage.

39. In July 2015, the access aisle did not have the required "NO PARKING" lettering.

40. In July 2015, a built-up curb ramp ran into the access aisle.

41. In July 2015, this curb ramp caused cross-slopes greater than 2%

42. In July 2015, this curb ramp caused running slopes greater than 2%.

43. There is currently one parking space at Burger King marked as reserved for persons with disabilities.

44. There is currently no van accessible space at Burger King.

45. The parking space marked as reserved for persons with disabilities at Burger King is not currently in compliance with the ADAAG.

46. Currently, the parking space marked as reserved for persons with disabilities measures less than 216 inches in length.

47. Currently, the access aisle adjacent to the parking space marked as reserved for persons with disabilities measures less than 216 inches in length.

48. Currently, the parking space marked as reserved for persons with disabilities does not have the required "Minimum fine $250" signage.

49. Currently, the access aisle does not have the required "NO PARKING" lettering.

50. Currently, a built-up curb ramp runs into the access aisle.

Complaint

51. Currently, this curb ramp causes cross-slopes greater than 2%

52. Currently, this curb ramp causes running slopes greater than 2%.

53. Plaintiff visited IHOP in July 2015.

54. Plaintiff visited Burger King in July 2015.

55. Plaintiff personally encountered these violations and they denied him full and equal access.

56. Because Plaintiff was unable to safely park his van and deploy his ramp, he was forced to go elsewhere.

57. Restrooms are also one of the facilities, privileges, and advantages offered by Defendants to patrons of IHOP.

58. And, although he did not personally confront the following barriers, Plaintiff alleges that the restroom at IHOP is not accessible to persons with disabilities.

59. In July 2015, the plumbing underneath the sink was not wrapped to protect against burning contact.

60. In July 2015, there was no clear floor space in front of the disposable seat cover dispenser because it was located behind the toilet.

61. In July 2015, the flush control was not located on the wide or open side of the toilet.

62. In July 2015, there was insufficient clear floor space on the transfer side of the toilet because a trash can was kept there acting as an obstruction that reduced the clear floor space to less than 18 inches in width and far less than 60 inches when measured perpendicular from the side wall.

63. Currently, the plumbing underneath the sink is not wrapped to protect against burning contact.

64. Currently, there is no clear floor space in front of the disposable seat cover dispenser because it is located behind the toilet.

65. Currently, the flush control is not located on the wide or open side of the

Complaint

toilet.

66. Currently, there is insufficient clear floor space on the transfer side of the toilet because a trash can is kept there acting as an obstruction that reduces the clear floor space to less than 18 inches in width and far less than 60 inches when measured perpendicular from the side wall.

67. Restrooms are also one of the facilities, privileges, and advantages offered by Defendants to patrons of Burger King.

68. And, although he did not personally confront the following barriers, Plaintiff alleges that the restroom at Burger King is not accessible to persons with disabilities.

69. In July 2015, the flush control was not located on the wide or open side of the toilet.

70. In July 2015, there was insufficient clear floor space on the transfer side of the toilet because a trash can was kept there acting as an obstruction that reduced the clear floor space to less than 18 inches in width and far less than 60 inches when measured perpendicular from the side wall.

71. Currently, the flush control is not located on the wide or open side of the toilet.

72. Currently, there is insufficient clear floor space on the transfer side of the toilet because a trash can is kept there acting as an obstruction that reduces the clear floor space to less than 18 inches in width and far less than 60 inches when measured perpendicular from the side wall.

73. These barriers caused Plaintiff great difficulty and frustration.

74. Plaintiff would like to return and patronize IHOP and Burger King but will be deterred from visiting until the defendants cure the violations.

75. The violations identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact,

7

Complaint

these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable.

76. Additionally, on information and belief, the plaintiff alleges that the failure to remove these barriers was intentional because: (1) these particular barriers are intuitive and obvious; (2) the defendants exercised control and dominion over the conditions at this location and, therefore, the lack of accessible facilities was not an "accident" because, had the defendants intended any other configuration, they had the means and ability to make the change.

77. Given the obvious and blatant violation, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to her disability. Plaintiff will amend the Complaint to provide proper notice regarding the scope of this lawsuit once she conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to her disability remedied. See *Doran v. 7-11*, 506 F.3d 1191 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to her disability removed regardless of whether he personally encountered them).

78. Plaintiff is and has been deterred from returning and patronizing IHOP and Burger King because of his knowledge of the illegal barriers that exist. Plaintiff will, nonetheless, return to the businesses to assess ongoing compliance with the ADA and will return to patronize IHOP and Burger King as a customer once the barriers are removed.

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all Defendants.) (42 U.S.C. section 12101, et seq.)

Complaint

79. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

80. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

  a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

  b. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."

  c. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

81. Any business that provides parking spaces must provide a sufficient number of handicap parking spaces. 1991 Standards § 4.1.2(5). 2010

Complaint

Standards § 208. The required minimum number of handicap parking spaces is dependent on the total number of parking spaces available. *Id.* According to the 1991 Standards, if a parking lot has 1-25 spaces, it must have at least 1 accessible parking space. 1991 Standards § 4.1.2(5)(a). And 1 in every 8 of those accessible parking spaces, but not less than 1, must be a "van" accessible parking space, *i.e.*, having an eight foot access aisle. 1991 Standards § 4.1.2(5)(b). Under the 2010 Standards, a parking lot with 1-25 spaces must have at least 1 accessible space and 1 of them must be van accessible. 2010 Standards § 208.2 & § 208.2.4.

82. Here, the failure to provide van accessible parking spaces at IHOP and Burger King is a violation of the ADA.

83. Any business that provides parking spaces must provide accessible parking spaces. 1991 Standards § 4.1.2(5); 2010 Standards § 208. To qualify as a reserved handicap parking space, the space must be properly marked and designated. Under the ADA, the method, color of marking, and length of the parking space are to be addressed by state or local laws or regulations. See 36 C.F.R., Part 1191, § 502.3.3. Under the California Building Code, to properly and effectively reserve a parking space for persons with disabilities, each parking space must be at least 216 inches in length. CBC § 11B-502.2. The access aisle must extend the full length of the parking spaces it serves. 2010 Standards § 502.3.2. Under the California Building Code, to properly and effectively reserve a parking space for persons with disabilities, each such space must be identified with a reflectorized sign permanently posted adjacent to and visible from each stall or space and additional sign or additional language below the symbol of accessibility must state, "Minimum Fine $250" to ensure that the space remains available for persons with disabilities. CBC § 1129B.4. Additionally, the surface of the handicap parking stall must have a profile view of a wheelchair occupant (♿) that is 36 inches by 36 inches. *Id.*

Complaint

And the surface of the access aisle must have a blue border. CBC § 1129B.3. The words "NO PARKING" in letters at least a foot high must be painted on the access aisle. *Id.*

84. Here, the parking space at IHOP measured less than 216 inches, in violation of the ADA.

85. Here, the access aisle at IHOP measured less than 216 inches, in violation of the ADA.

86. Here, the access aisle at IHOP did not have the required blue border, in violation of the ADA.

87. Here, the access aisle at IHOP did not have the required "NO PARKING" lettering, in violation of the ADA.

88. Here, the parking space at Burger King measured less than 216 inches, in violation of the ADA.

89. Here, the access aisle at Burger King measured less than 216 inches, in violation of the ADA.

90. Here, the parking space at Burger King did not have the required fine signage, in violation of the ADA.

91. Here, the access aisle at Burger King did not have the required "NO PARKING" lettering, in violation of the ADA.

92. Under the 1991 Standards, parking spaces and access aisles must be level with surface slopes not exceeding 1:50 (2%) in all directions. 1991 Standards § 4.6.3. Here, the access aisle is not level and has a ramp taking up part of the access aisle. Under the 2010 Standards, access aisles shall be at the same level as the parking spaces they serve. Changes in level are not permitted. 2010 Standards 502.4. "Access aisle are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles." 2010 Standards § 502.4 Advisory. Specifically, built up curb ramps are not permitted to project into access aisles and parking spaces. *Id.* No more than a

Complaint

1:48 slope is permitted. 2010 Standards § 502.4.

93. Here, the failure to provide level parking at Burger King is a violation of the ADA.

94. Hot water and drain pipes under lavatories must be insulated or otherwise configured to protect against contact. 1991 Standards § 4.19.4; 2010 Standards §606.5.

95. Here, the failure to wrap the plumbing underneath the sink at IHOP is a violation of the ADA.

96. Clear floor space that allows a forward or a parallel approach by a person using a wheelchair shall be provided at controls, dispensers, receptacles, and other operable equipment. 1991 Standards § 4.27.2; 2010 Standards § 309.2.

97. Here, the failure to provide such floor space at the toilet seat cover dispenser at IHOP is a violation of the ADA.

98. Flush controls for accessible toilets must be mounted on the open or wide side of the toilet, i.e., not the side nearest the adjacent side wall. 1991 Standards § 4.16.5; 2010 Standards § 604.6.

99. Here, the failure to properly locate the flush control at IHOP and Burger King is a violation of the ADA.

100. Under the 1991 Standards, there must be at least 18 inches of clear floor space on the transfer side of a side-transfer toilet. 1991 Standards § 4.16.2. Under the 2010 Standards, clearance around a water closet shall be 60 inches minimum measured perpendicular from the side wall and 56 inches minimum measured perpendicular from the rear wall. 2010 Standards § 604.3.1.

101. Here the failure to provide this clear transfer space at IHOP and Burger King is a violation of the ADA.

102. A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be

Complaint

readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

103. Here, the failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the law.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ. Code § 51-53.)

104. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

105. Because the defendants violated the plaintiff's rights under the ADA, they also violated the Unruh Civil Rights Act and are liable for damages. (Cal. Civ. Code § 51(f), 52(a).)

106. Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. (Cal. Civ. Code § 55.56(a)-(c).)

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000.

Complaint

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code §§ 52.

Dated: May 11, 2016                     CENTER FOR DISABILITY ACCESS

By: _____
Mark Potter, Esq.
Attorneys for Plaintiff

Complaint